UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TYRONE HUGHES, | ) |
| *Plaintiff,* | ) |
| *v.* | ) |
| FREDERICKSBURG HEALTHCARE, LLC, d/b/a/ CARRIAGE HILL HEALTH & REHAB CENTER | ) Civil Action No.: 3:13-cv-061 |
| and | ) |
| ANDREA BAGWELL, | ) |
| *Defendants.* | ) |

**FIRST AMENDED COMPLAINT**

The Plaintiff, Tyrone Hughes, by counsel, states as follows for his First Amended Complaint against his former employer, Fredericksburg Healthcare, LLC, d/b/a Carriage Hill Health & Rehab Center, and his former supervisor, Andrea Bagwell, as follows:

**Nature of Claims**

1. This Complaint arises out of Defendant Fredericksburg Healthcare, LLC, d/b/a Carriage Hill Health & Rehab Center and Defendant Andrea Bagwell's termination of Plaintiff Tyrone Hughes, in violation of the Family and Medical Leave Act of 1993, 20 U.S.C. § 2601 et seq. (hereinafter the "FMLA"), shortly after Tyrone Hughes had informed his employer that he was suffering from a serious medical condition and had taken leave.

2. Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, liquidated damages, front pay and/or reinstatement for FMLA violations, and attorney's fees.

## Jurisdiction and Venue

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 2617(a)(2).

4. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b) and 29 U.S.C. § 1132(e)(2). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; Mr. Hughes would be employed in this judicial district but for the unlawful actions and practices of the Defendants; Defendant Fredericksburg Healthcare, LLC, d/b/a Carriage Hill Health & Rehab Center is present and regularly conducts affairs in this judicial district; and Defendant Andrea Bagwell regularly did or solicited business, engaged in a persistent course of conduct, or derived substantial revenue from services rendered in the Commonwealth. Jurisdiction over Defendants is proper, as, at all times relevant to this suit, Defendants were residents of the Commonwealth of Virginia and were present and regularly conducted affair in this judicial district.

## Parties

5. The Plaintiff, Tyrone Hughes (hereinafter "Plaintiff") is a male U.S. citizen and resident of Richmond, Virginia. At all times relevant to the matters alleged herein, Plaintiff was an eligible employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a).

6. The Defendant, Fredericksburg Healthcare, LLC, d/b/a Carriage Hill Health & Rehab Center (hereinafter referred to as "Defendant Carriage Hill" or "the company"), at all times pertinent hereto, was, is, and has been an employer engaged in an industry affecting

commerce with more than 50 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year. Defendant is an "employer" within the meaning of 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the FMLA.

7. The Defendant, Andrea Bagwell (hereinafter referred to as "Defendant Bagwell"), at all times pertinent hereto was the Administrator for Defendant Carriage Hill and was Plaintiff's direct supervisor. Defendant Bagwell was an "employer" within the meaning of 29 U.S.C. § 2611(4)(A) and is subject to the provisions of the FMLA. Upon information and belief, Defendant Bagwell is a resident of the State of Tennessee.

## Factual Allegations

8. Plaintiff incorporates the allegations of the preceding paragraphs as though fully set forth here.

9. On or about November 22, 2010, Plaintiff began his employment with Defendant Carriage Hill.

10. Plaintiff worked for Defendant Carriage Hill in the position of Food Service Director.

11. Sometime in lae 2011 or early 2012, Defendant Bagwell became Plaintiff's direct supervisor. Defendant Bagwell's title was Administrator.

12. Defendant Bagwell had the authority to discipline or terminate Plaintiff.

13. Plaintiff was a full time employee.

14. Plaintiff's annual salary in 2012 was $54,054. In addition to his salary, Plaintiff received benefits, including health insurance.

3

15. Plaintiff enjoyed working for Defendant Carriage Hill, and his tenure at the company was, by all accounts, very successful. He performed his duties at or above the level reasonably expected by Defendant.

16. On or about November 11, 2011, Plaintiff sought medical treatment for anxiety and depression.

17. Plaintiff received treatment for his medical condition throughout the remainder of 2011 and during the first half of 2012.

18. After approximately the first year of his employment – in November of 2011 – Plaintiff received an excellent performance evaluation. Based on his excellent performance, Defendants gave Plaintiff approximately twice the salary increase that Defendant Carriage Hill's other employees received for 2011.

19. Throughout his entire employment with Defendants, Plaintiff was never written up, and he never received any forms of discipline from his superiors.

20. On or about June 26, 2012, Plaintiff requested leave under the FMLA to further treat his anxiety and depression.

21. Defendant Carriage Hill provided him with the necessary FMLA papers, which Plaintiff's physician filled out.

22. Plaintiff submitted his completed FMLA application to Defendants and went out on FMLA leave from June 26, 2012 until July 13, 2012.

23. Pursuant to Defendants' sick leave and vacation policies, his FMLA leave was to be paid leave.

24. Defendants continued paying his wages after Plaintiff went on medical leave on June 26, 2012, consistent with its sick leave and vacation policies.

25. Plaintiff was scheduled to return to work on July 16, 2012.

26. While Plaintiff was out on approved paid medical leave, Defendant Bagwell called Plaintiff on his cell phone and requested a meeting.

27. Plaintiff agreed, and he and Defendant Bagwell met at a Starbucks Restaurant in Mechanicsville on July 9, 2012.

28. The meeting was an ambush: knowing about Hughes' anxiety and depression, Defendant Bagwell told Plaintiff that the company had made some changes in the dietary department. She then told Plaintiff that, upon his return on July 16, 2012, Defendants would give Plaintiff two options: either Defendants would write Plaintiff up and put him on an Action Plan, or Plaintiff could accept a Severance Package.

29. Plaintiff was completely surprised since he had never been written up or disciplined in any way throughout his employment with Defendant Carriage Hill.

30. Plaintiff told Defendant Bagwell, "I don't know what to say. I have no idea where you're coming from."

31. Defendant Bagwell urged Plaintiff to opt for the severance package, telling him, "This is a lot of money."

32. Defendant Bagwell told Plaintiff, "You don't have to think about this today, but you have to think about it before you come back."

33. Defendant Bagwell then got up and left.

34. The following evening, July 10, 2012, upon returning home from a doctor's visit, Plaintiff found a letter from Defendants on his doorstep.

35. In this letter, Defendants informed Plaintiff that upon his return on July 16, 2012 at 9:00 a.m., Defendant Bagwell would meet with Plaintiff as part of "the normal counseling

process" to "provide you with instruction and direction regarding your duties with the goal of your achieving success. Regardless of whether or not this is labeled an 'action plan' or something else, we want to make sure that you are clear on the essential goals that must be achieved."

36. Defendants' July 10 letter was drafted with the intent of creating a "paper trail" fabricating Plaintiff's performance issues when in fact he had none. Defendants wrote, "Several times you have indicated to me that you do not want to be put on an 'action plan.' In light of your concerns, I asked if you desired to return to work after your leave," when they knew that Plaintiff had not merely expressed his "concern" but his opposition to unlawful retaliation and threats by Defendants. Defendant Bagwell had not asked if Plaintiff desired to return to work after his leave "in light of his concerns," but she had instead offered the choice between a severance and a retaliatory action plan.

37. Defendants also wrote of their "goal of [Plaintiff's] achieving success" and offered "ways to help you achieve success," falsely implying that success was lacking, when in fact Plaintiff's performance with Defendants had been very successful.

38. Defendants further wrote "that at this time, it is best to continue with the normal counseling process at the Center level," fabricating a false record seemingly necessitating "counseling" for the Plaintiff, when in fact Plaintiff's performance with Defendants had been very successful and no counseling was indicated.

39. The meeting and the letter had a purpose: intimidate Plaintiff, increase his anxiety level and make him reconsider if he really "desired" to come back.

40. The next day, Plaintiff sent an email to Defendant Bagwell where he expressed his concern about the deteriorating working relationship. Plaintiff protested that Bagwell was

dishonestly insinuating his leave had not been medically necessary. He offered to provide more medical documentation. Plaintiff further wrote, "So I would like to inquire about the severance package…" Plaintiff continued, "Once this is received I will sign and return or meet with you somewhere with my letter of [sic] resign effective immediately at that time."

41. On July 12, 2012, Defendants sent Plaintiff a second letter where Defendant Carriage Hill indicated that it would offer Plaintiff a severance package, provided he would sign a general release of all claims. Defendants sent this letter with the intent of fabricating a record of problems with Plaintiff's performance where there had not been any. Acknowledging that Plaintiff had no "disciplinary action" in his file and that he had received a significant raise in recognition of his accomplishments, Defendants went on to list "several areas that needed improving, including food sanitation, accountability with staff, and staying within budget," claiming that these problems had been ongoing since "December" of 2011. Defendants knew that there was no written documentation of any of these allegedly long-standing problems.

42. On July 12, 2012, Defendants also sent Plaintiff a five page letter entitled "Payment Agreement," and notified Plaintiff that Fredericksburg Healthcare LLC d/b/a/ Carriage Hill Health & Rehab Center … has accepted your resignation effective July 16, 2012."

43. By its terms, the offer to accept the Payment Agreement was open until 5:00 p.m., July 16, 2012.

44. On the page where Plaintiff was to sign the Payment Agreement, the agreement stated, "I further acknowledge that I was given an opportunity to consider this Agreement and advised to consult an attorney if I had any questions."

45. Despite the fact that Plaintiff's medical leave had been approved as paid leave from June 26, 2012 until July 13, 2012, and despite the fact that he was scheduled to return from

this leave no earlier than July 16, 2012, Defendant Carriage Hill only paid Plaintiff's wages through July 12, 2012.

46. Defendant Carriage Hill effectively terminated Plaintiff at the end of July 12, 2012 and stopped paying his wages on that day.

47. Defendant Carriage Hill's decision to terminate Plaintiff on July 12, 2012, was intentional, and it was designed to interfere and had the effect of interfering, with Plaintiff's rights under the FMLA to take medical leave.

48. On July 17, 2012, Defendant Bagwell sent a text message to Plaintiff, asking him to confirm that he had received the Payment Agreement.

49. Unbeknownst to Plaintiff, by this time Defendants had already terminated him and stopped paying his wages.

50. Plaintiff responded by asking for a few more days to consider his options.

51. Among the options Plaintiff wanted to consider was the opportunity "to consult an attorney" to review the Payment Agreement, as Defendants had advised him to do.

52. On July 18, 2012, Defendant Bagwell sent an email to Plaintiff, notifying him that Defendants considered him to have voluntarily resigned on July 17, 2012. In this email Defendants again created a "paper trail" to falsely document performance issues where there had been no documentation of any issues whatsoever.

   a. Defendants wrote, "You responded on July 11, 2012 by email. We understood your email to state that you did not intend to return to work, and you then asked if you could resign and get paid out your 30-day's notice." Plaintiff had not stated that he did not intend to return to work. Plaintiff had not asked if he could resign. Plaintiff had made no mention of any 30 days' notice.

8

    b. Defendants wrote, "We heard nothing from you and you did not show up for work as required on Monday, July 16, 2012. Since you did not return to work, did not communicate with us, and let the deadline for the pay-out in lieu of notice pass, we could only assume that you resigned." Defendant did not in fact assume that Plaintiff resigned. Instead, on July 17, Defendant sent a text message, asking Plaintiff what he was planning to do. Plaintiff then did communicate with Defendant and sent a message that made it clear that he had not resigned. Instead he was actively "considering" his options, just as Defendants' Payment Agreement had encouraged him to do. ("I further acknowledge that I was given the opportunity to <u>consider</u> this Agreement…") (Emphasis added). When Defendants wrote the email on July 18, 2012, (1) they had heard from Plaintiff, (2) Plaintiff had communicated with Defendants, and (3) Defendants had full knowledge that Plaintiff had not resigned. Defendants' statements to the contrary were false. Defendants' statement that they "could only assume" that Plaintiff resigned was false: they had made no such assumption.

    c. Defendants further wrote, "Therefore, the only conclusion we can reach is that you voluntarily decided not to return to work, and you rejected our offer of pay-out in lieu of notice." Defendants knew that they had not reached any such conclusion. Defendants were merely fabricating a record in an attempt to label Plaintiff's termination a voluntary resignation by Plaintiff.

53.     Defendants informed Plaintiff on July 18, 2012 that he was no longer employed.

54. Defendants fabricated the pretext of "voluntary resignation" to hide the true, unlawful and discriminatory reason: they no longer wanted to employ Plaintiff because he had taken medical leave pursuant to the FMLA.

55. Defendants had made and implemented the decision to terminate Plaintiff on July 12, 2012.

56. Defendants' decision to terminate Plaintiff was made and implemented in willful, blatant and intentional disregard of, and in violation of, Plaintiff's rights under the FMLA.

## COUNT ONE
## FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. §2601

57. The foregoing allegations are incorporated as if re-alleged herein.

58. All of the acts of Defendant Carriage Hill's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of Defendant Carriage Hill.

59. During the 21-month term of his employment with Defendants, Plaintiff's job performance met or exceeded Defendants' legitimate expectations.

60. Plaintiff's health condition for which he took medical leave constituted a serious health condition within the meaning of the FMLA of which the Defendants were aware.

61. Plaintiff was eligible for FMLA leave.

62. Defendants, Fredericksburg Health Care, LLC, and Andrea Bagwell, were each an "employer" within the meaning of the FMLA.

63. Plaintiff was entitled to leave under the FMLA.

64. Plaintiff gave his employers, Fredericksburg Health Care, LLC and Andrea Bagwell, adequate notice of his intention to take leave.

65. Plaintiff was entitled under the FMLA to the medical leave, and Defendants had approved his medical leave.

66. Defendants terminated Plaintiff's employment at the end of July 12, 2012, four days before he was scheduled to return from medical leave.

67. Defendants denied Plaintiff FMLA benefits to which he was entitled, including but not limited to one extra day of paid leave, consistent with Defendants' FMLA and sick leave policies.

68. The acts and practices of the Defendants complained of herein, including the termination of Plaintiff's employment following his FMLA leave, were willful and interfered with, restrained and/or denied Plaintiff's exercise of his rights under the FMLA, in violation of 29 U.S.C. §2615(a)(1).

69. Plaintiff has been damaged as a direct result of Defendants' unlawful actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

## COUNT TWO
## FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. §2601
### Retaliation

70. The foregoing allegations are incorporated as if re-alleged herein.

71. All of the acts of Defendant Carriage Hill's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of Defendant Carriage Hill.

72. Plaintiff's health condition for which he took medical leave constituted a serious health condition within the meaning of the FMLA of which the Defendants were aware.

73. Plaintiff was eligible for FMLA leave.

74. Defendants terminated Plaintiff's employment at the end of July 12, 2012, four days before he was scheduled to return from medical leave.

75. Plaintiff was entitled under the FMLA to the medical leave, and Defendants had approved his medical leave.

76. Plaintiff engaged in protected activity when he asked for and subsequently took medical leave.

77. Defendants took adverse action against Plaintiff when they terminated Plaintiff on July 12 and, again, on July 18, 2012.

78. Defendants terminated Plaintiff because he had taken FMLA leave and in retaliation for taking FMLA leave.

79. The acts and practices of the Defendants complained of herein, including the termination of Plaintiff's employment following his FMLA leave, constitute unlawful retaliation under the FMLA, in violation of 29 U.S.C. §2615(a) (2).

Plaintiff has been damaged by Defendants' actions, including, but not limited to loss of employment, loss of compensation and employment related benefits.

WHEREFORE, Plaintiff Tyrone Hughes demands that judgment be entered in his favor and against the Defendants on the above-stated count and that in addition this Court issue an Order:

(i) Declaring that the Defendants' acts and practices complained of herein are in violation of the Plaintiff's rights as secured by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615, et seq.;

(ii) Requiring and issuing a mandatory injunction directing the Defendant Carriage

Hill to reinstate the Plaintiff to a position of equal duties and responsibilities as the Plaintiff would have received but for the Defendant Carriage Hill's conduct, with equal pay and benefits (retroactive to July 12, 2012), or in the alternative for an award of judgment for front pay and benefits under the FMLA;

(iii) Awarding Plaintiff back pay for violations of the FMLA;

(iv) Awarding Plaintiff liquidated damages in an amount to be determined at trial for willful violation of the FMLA;

(v) Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(vi) Awarding Plaintiff other appropriate injunctive relief;

(vii) Awarding Plaintiff incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and in addition;

(viii) Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**

                                                  **TYRONE HUGHES**
By Counsel

_____/s/ Tim Schulte_____
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB# 41881)
Shelley & Schulte, P.C.
2020 Monument Avenue, First Floor
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
Blackwell.Shelley@shelleyschulte.com
Tim.Schulte@shelleyschulte.com

13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2013, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

>Karen S. Elliott, Esquire
>Annemarie DiNardo Cleary, Esquire
>Sands Anderson PC
>Bank of America Center
>1111 East Main Street, Suite 2400 (23219)
>P.O. Box 1998
>Richmond, Virginia 23218
>(804) 648-1636
>(804) 783-7291 [fax]
>kelliott@sandsanderson.com
>acleary@sandsanderson.com
>
>Counsel for Defendant Fredericksburg Healthcare, LLC, d/b/a Carriage Hill Health & Rehab Center

\_\_\_\_/s/ Tim Schulte_____
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB# 41881)
Shelley & Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
Blackwell.Shelley@shelleyschulte.com
Tim.Schulte@shelleyschulte.com